*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SANDERS/SANDERS-COLBERT, Minors.

UNPUBLISHED
March 17, 2026
10:05 AM

No. 375843
Wayne Circuit Court
Family Division
LC No. 2024-001108-NA

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

In this termination of parental rights appeal, respondent-mother contends the trial court erroneously took jurisdiction over her children and then terminated her rights to them following her teenage daughter's reporting of sexual abuse by respondent's partner. We affirm.

## I. PROCEDURAL AND FACTUAL BACKGROUND

When she was 16 years old, respondent's daughter, NC, accused her mother's partner, VH, of sexually abusing her for over three years. Child Protective Services (CPS) commenced an investigation, and respondent denied knowledge of any abuse. NC contradicted that assertion— according to NC, respondent once walked in while VH was getting on top of her in bed. Respondent "cried" and asked NC "what happened." After NC told her, respondent got into an argument with VH. But she neither reported VH to the police nor moved herself and her children out of VH's home.

The CPS investigation ultimately resulted in the Department of Health and Human Services (DHHS) petitioning for the trial court to take jurisdiction over NC and her brother, LM, under MCL 712A.2(b)(1) and (2), and that it terminate respondent's parental rights at the initial disposition under MCL 712A.19b(3)(b)(*ii*) (parent had opportunity to prevent sexual abuse, failed to do so, and there is a reasonable likelihood child will suffer abuse if placed in parent's home), (b)(*iii*) (nonparent adult's act caused sexual abuse and reasonable likelihood child will suffer abuse by nonparent adult in future if placed in parent's home), and (j) (reasonable likelihood of harm if returned to parent). The trial court authorized the petition.

-1-

As part of the proceedings, a licensed social worker with the Clinic for Child Study interviewed respondent. During the interview, respondent admitted that it was her responsibility to keep NC safe and that she failed to do so. She also reported that she was homeless and used VH's address as her mailing address. In her subsequent report, the social worker opined that respondent lacked stability in her life and was unable to make appropriate decisions regarding the safety of her children because of ongoing mental health issues. Ultimately, the social worker recommended that the trial court terminate respondent's parental rights.

During the adjudication trial, NC confirmed that VH had inappropriately touched her for three years. Although she was unable to state the extent to which respondent was aware of the abuse, she again testified that respondent witnessed VH trying to get on top of her and that she discussed the assault with respondent. NC also confirmed that her family continued to stay at VH's home after that incident, and that respondent never reported the incident to law enforcement. The trial court ultimately credited NC's testimony despite the lack of certain details, found jurisdiction over NC and LM proper under MCL 712A.2(b)(1) and (2), and found statutory support for grounds for termination under MCL 712A.19b(3)(b)(*ii*), (b)(*iii*), and (j).

In considering best interests, the trial court took into evidence the Clinic for Child Study report and heard testimony from the CPS investigator. She testified that CPS permitted LM to remain in VH's home because he had a tether—arising out of a delinquency matter—that was tied to VH's home. The investigator also testified that she believed respondent was still in a relationship with VH because she had seen respondent's vehicle at his home on multiple occasions. Respondent denied this assertion, testifying that she was no longer in a relationship or lived with VH, but just visited his house to feed her service dog. Respondent further clarified that when LM had to remain at VH's home because of the tether, VH temporarily moved out.

The trial court concluded that the preponderance of the evidence supported the conclusion that terminating respondent's parental rights to NC and LM was in their best interests. While acknowledging their bond to her, the trial court found incredible respondent's denial of remaining in a relationship with VH and concluded that her failure to respond to VH's abuse showed she "need[ed] him for things, but at the expense of her children." That, in the trial court's view, justified termination. This appeal followed.

## II. STATUTORY GROUNDS FOR JURISDICTION AND TERMINATION

We consider first the trial court's finding that evidence presented at the adjudication trial sufficiently supported statutory grounds for jurisdiction and termination. This Court reviews those determinations for clear error. *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020) (jurisdiction); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014) (termination). And through that discerning review standard, we hold respondent's challenges to those determinations to be without merit.

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). "Generally, a court determines whether it can take jurisdiction over the child in the first place during the adjudicative phase." *Id*. "The court can exercise jurisdiction if a respondent-parent enters a plea of admission or no contest to allegations in the petition, see MCR 3.971, or if the

Department proves the allegations at a trial, see MCR 3.972." *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). "The question at adjudication is whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders, including an order terminating parental rights." *Id*.

We begin with the trial court's taking jurisdiction over NC and LM. The trial court did so under MCL 712A.2(b)(1) and (2), which provide jurisdiction over a juvenile

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

> * * *

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

When making this determination, "the trial court must examine the child[ren's] situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004). There must be a preponderance of the evidence to take jurisdiction. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004).

*Jurisdiction over NC*. There is no clear error in the trial court's exercise of jurisdiction over NC, as the preponderance of evidence supports jurisdiction under both 712A.2(b)(1) and (2).

Concerning the former, NC testified that respondent walked in while VH was on top of her in bed, discussed the abuse with NC, and then got into an argument with VH about "what happened," but yet respondent did not call police or remove either NC or LM from the home. This testimony alone indicates respondent witnessed VH abusing NC and elected to keep her children in the very environment where the abuse occurred. Consequently, there was sufficient evidence to establish MCL 712A.2(b)(1) by a preponderance of the evidence.

The record also supports a separate jurisdictional finding under MCL 712A.2(b)(1). NC testified that VH sexually abused her while she, LM, and respondent lived with VH. Her medical records substantiated this testimony. Thus, notwithstanding respondent's knowledge regarding the abuse, NC's testimony and medical records establish that VH abused NC, and respondent's home was an unfit place for NC to live. True, NC was unable to definitively state whether respondent was aware of the extent of the abuse before NC made the accusations. But that is not material to the analysis under MCL 712A.2(b)(2), for that section does not require that a parent have knowledge of whatever is making a home an unfit place to live.

*Jurisdiction over LM*. Nor did the trial court err in taking jurisdiction over LM by application of the anticipatory neglect doctrine. That principle "recognizes that how a parent treats one child is certainly probative of how that parent may treat other children," *In re AH*, 245 Mich

App 77, 84; 627 NW2d 33 (2001) (cleaned up), and permits a trial court to take jurisdiction in cases involving multiple children, *Kellogg*, 331 Mich App at 259. More specifically, a trial court may take jurisdiction over other children without abuse or neglect of them. *Id*.

Here, NC testified that VH sexually abused her in the home where she lived with respondent, LM, and VH, and then remained in that home after respondent became aware of the abuse. NC's abuse, combined with respondent's election to stay in the home in the face of that abuse, indicates that LM was at risk of future physical or mental harm if he remained in respondent's care even without allegations of abuse or neglect of LM. For this reason, the trial court properly assumed jurisdiction over LM under the anticipatory neglect doctrine.

*Respondent's arguments to the contrary*. To resist these conclusions, respondent notes the sparsity of the record supporting petitioner—the only evidence establishing that respondent knew about the abuse was NC's testimony, which respondent says was "inconsistent" at times. But she does not specifically identify what those inconsistencies are, thus rendering her argument abandoned. See *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014). And even if not so, testimonial inconsistencies are for a trial court to consider in the first instance. See *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014) ("[We] must defer to the special ability of the trial court to judge the credibility of witnesses."). Whether NC's inconsistent testimony mattered in a material sense is one of credibility, and it is not this Court's prerogative "to displace the trial court's credibility determination." *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009). And here, the trial court specifically noted that upon observing NC's testimony, it was clear that testifying was a traumatic experience for NC, that she was visibly disturbed, and that it is common for victims of sexual assault to not remember every detail. For those reasons, the trial court found credible NC's testimony. We cannot conclude that represented clear error requiring reversal.

*Statutory Grounds for Termination*. Respondent also challenges the trial court's findings concerning statutory grounds for termination, raising issues with the trial court's analysis under MCL 712A.19b(3)(b)(*ii*) and (b)(*iii*). But she does not address the trial court's independent holding under (3)(j). Because a trial court need only conclude that termination is proper under one of the grounds listed in MCL 712A.19b(3), and respondent failed to challenge the trial court's (3)(j) ruling, we deem her appeal on this issue abandoned. See *Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 635; 853 NW2d 459 (2014).

### III. BEST INTERESTS

Respondent next argues that the trial court clearly erred in concluding that termination of respondent's parental rights was in NC's and LM's best interests. We disagree.

A trial court "cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the [children]." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citation omitted). "Parents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003). However, "[t]he focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022).

"In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *Sanborn*, 337 Mich App at 276 (quotation marks and citation omitted). A trial court "may consider such factors as the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015). "The trial court *may* also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 713 (emphasis added). Further, a child's safety, well-being, and the risk a child might face if returned to the parent's care are also relevant to the best-interest determination. *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011). This Court "review[s] for clear error a trial court's factual finding that termination of a parent's parental rights was in the child's best interests." *Atchley*, 341 Mich App at 346.

On appeal, respondent advances two short arguments concerning best interests. First, she notes that given their ages (15 and 17), NC and LM likely will not be adopted. Even if true, this assertion is irrelevant because they are in the care and custody of their father. Nor do we discern any error in the trial court failing to consider adoption given the permissive and discretionary nature of the statute—the trial court *may* consider several factors when deciding whether termination is in the children's best interests. *White*, 303 Mich App at 713.

Second, respondent emphasizes the established bond she has NC and LM. That is undisputed. But what respondent does not address is that the trial court balanced that bond with many other factors by concluding that respondent's significant threat to NC's and LM's health and safety outweighed any bond they shared with her, especially through the lens of her witnessing the sexual assault of her own daughter and not taking any steps to either report that abuse or ensure that it could not occur again. We therefore cannot find that the trial court clearly erred in concluding that termination of respondent's parental rights was in NC's and LM's best interests.

## IV. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock

-5-